IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| DEREK L. HAND and ASHLEY N. HAND, | ) ) ) |
| Plaintiffs, | ) ) 7:15-cv-01838-LSC |
| vs. | ) ) ) |
| WHOLESALE AUTO SHOP, LLC, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OF OPINION**

Before the Court is Plaintiffs Derek L. Hand ("Mr. Hand") and Ashley N. Hand ("Mrs. Hand") (collectively the "Hands")'s Motion for Default Judgment as well as their Memorandum Regarding Personal Jurisdiction. (Docs. 17 & 19.) Both issues have been adequately briefed and are ripe for adjudication. For the following reasons, the Hands' Motion for Default Judgment is due to be DENIED for lack of personal jurisdiction.

I. **FACTS**

The Hands are Alabama residents. Defendant Wholesale Auto Shop, LLC ("Wholesale Auto") is a Tennessee corporation whose principal place of business is in Tennessee. In early 2014, Wholesale Auto listed a 2010 Jeep Wrangler Sport

SUV 2D (the "Jeep") with 66,692 miles on the website www.autotrader.com. Mr. Hand saw the listing and through the website requested Wholesale Auto to call him about the Jeep on his Alabama telephone number. Mr. Hand and Wholesale Auto spoke on the phone three times, and Wholesale Auto dialed Mr. Hand for at least two of those three calls. Additionally, Wholesale Auto faxed basic information about the Jeep to Mr. Hand at his request to his local Brookwood, Alabama fax number so that he could acquire financing for its purchase through Wells Fargo.

During their interactions, Mr. Hand asked Wholesale Auto if the Jeep's mileage was correct as its price was lower than he expected. Wholesale Auto claimed that the mileage was accurate and that Wholesale Auto was able to provide a low price because it had a good relationship with a local bank who had recently recovered the vehicle. At no point did Wholesale Auto ever communicate to Mr. Hand that there was a discrepancy between the advertised mileage and the Jeep's actual mileage. In one of the three calls, Mr. Hand agreed to pay Wholesale Auto's asking price for the Jeep. The Hands then drove to Chattanooga, Tennessee where they purchased the Jeep and took possession of it.

When the Hands purchased the Jeep, the odometer read 66,692 miles, which Wholesale Auto affirmed as accurate. When they sought to register the Jeep in Alabama, however, the Hands learned that the Jeep's true mileage at the time of

purchase was 253,603. They then filed this action on October 20, 2015, alleging violations of the Motor Vehicle Information and Cost Savings Act, 49 U.S.C.A. § 32710(b) (2012), the Alabama Deceptive Trade Practices Act, and state-law claims.

On December 9, 2015, the Court received a letter from Melissa Williams, the owner of Wholesale Auto, purportedly on its behalf. The Court did not treat the letter as an answer on behalf of Wholesale Auto, however, because Wholesale Auto is a corporation, and Ms. Williams is not an attorney. (*See* Doc. 12.) After no appearance or answer on behalf of Wholesale Auto, the Hands filed a motion for default judgment on May 31, 2017. Because the Court doubted the existence of personal jurisdiction over Wholesale Auto in Alabama, it asked the Hands during a July 5, 2017 telephone conference to prepare a supplemental brief addressing that issue, which they submitted on August 3, 2017.

## II. LEGAL STANDARD

Courts may raise the question of personal jurisdiction *sua sponte* when deciding whether to enter a default judgment when the defendant has failed to appear, provided the Court grants the parties the chance to argue why personal jurisdiction exists. *Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988) ("In the absence of a waiver, a district court may raise on its own motion an issue of defective venue or lack of personal jurisdiction; but the court

may not dismiss without first giving the parties an opportunity to present their views on the issue."); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (no error by district court to raise lack of personal jurisdiction *sua sponte* upon plaintiff's motion for default judgment); *Smarter Every Day, LLC v. Nunez*, No. 2:15-CV-01358-RDP, 2017 WL 1247500, at *2 (N.D. Ala. Apr. 5, 2017) (raising lack of personal jurisdiction *sua sponte* upon plaintiff's motion for default judgement); *Turi v. Stacey*, No. 5:13-CV-248-OC-22PRL, 2015 WL 403228, at *3 (M.D. Fla. Jan. 28, 2015), *aff'd*, 627 F. App'x 904 (11th Cir. 2015) (same). Because a "defendant may defeat subsequent enforcement of a default judgment in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction," *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999), raising the issue of personal jurisdiction at the default-judgment stage ultimately conserves judicial resources. The Court has provided the Hands an opportunity to show how personal jurisdiction exists in this case and they have presented their arguments for why this action is properly before the Court. (*See* Doc. 19.)

"A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *see also Daimler AG v. Bauman*, 134 S.

Page 4 of 13
Case 1:18-cv-00027-JRG-CHS Document 20 Filed 01/05/18 Page 4 of 13 PageID #: 111

Ct. 746, 753 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). A district court may exercise personal jurisdiction over a defendant when two conditions are met. First, jurisdiction must be proper under the forum state's long-arm statute. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). Second, exercising jurisdiction must not violate the defendant's rights under the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have sufficient "minimum contacts" with the forum state so as not to offend "traditional notions of fair play and justice." *Id.* (citations omitted). In Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Id.* Thus, the Court need only consider the limits of the Due Process Clause. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

There are two types of personal jurisdiction, general and specific; the Hands do not argue that general jurisdiction exists over Wholesale Auto. (Doc. 19 at 7 ("[P]laintiffs make no argument here concerning whether the Court can or cannot assert general in personam jurisdiction over the defendant.").) Instead, the Hands state that specific jurisdiction exists over Wholesale Auto in Alabama.

"Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990). The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). For a state to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum state. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The contacts with the forum state must also be purposeful and created by the "defendant *himself*." *Id.* at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). Due process requires that a defendant be subjected to specific jurisdiction of a State "based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 1123 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Specific jurisdiction does not require a large volume of contacts with the forum state, as even a single purposeful contact may give rise to personal jurisdiction. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957); *see also Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) ("The Court has made clear . . . that '[s]o long as it creates a "substantial connection" with the forum, even a single act can support jurisdiction.'" (quoting *Burger King*, 471 U.S. at 475 n.18 (1985))). When the plaintiff alleges an intentional tort, personal jurisdiction may be proper when the nonresident defendant has no other contacts with the forum. *Calder v. Jones,* 465 U.S. 783, 789-91 (1984). The Eleventh Circuit follows the *Calder* "effects" test for personal jurisdiction where the plaintiff alleges an intentional tort, which requires (1) an intentional tort (2) aimed at the forum state that (3) "caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello*, 544 F.3d at 1286.

In *Licciardello*, the Florida plaintiff was an entertainer who had previously employed the Tennessee defendant as his manager. *Id.* at 1282. Five years after the plaintiff terminated their contract, the defendant posted the plaintiff's trademarked name and picture on his website, implying that the plaintiff endorsed him as a personal manager. *Id.* Because the defendant's actions were "expressly aimed" at

the plaintiff and caused injury to him in the forum state, the court held that personal jurisdiction was proper. *Id.* at 1288.

If the Court finds that sufficient contacts exist to subject an out-of-state defendant to the forum state's courts, the Court must also consider whether the exercise of jurisdiction would "offend 'traditional notions of fair play and substantial justice.'" *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This analysis requires weighing various factors: the burden placed upon the defendant, the interests of the forum state in deciding the dispute, the plaintiff's interest in litigating in that forum, the interests of the interstate judicial system in an efficient resolution of disputes, and the interests of fundamental social policies. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000).

### III. DISCUSSION

Wholesale Auto does not have such minimum contacts with Alabama as to be subject to its personal jurisdiction. Although Wholesale Auto's advertisement on autotrader.com was "easily viewable" in Alabama, it was likewise viewable throughout the United States. National advertisements that do not target a specific

state are not sufficient to establish minimum contacts. *See Charia v. Cigarette Racing Team*, 583 F.2d 184 (5th Cir. 1978) (finding that an advertisement in a nationally circulated magazine did not establish minimum contacts).[1]

The communications between Mr. Hand and Wholesale Auto do not constitute "purposeful availment" of the benefits of transacting business in Alabama. Had Wholesale Auto initiated the negotiations, it may have "purposefully availed" itself of the forum state; however, Mr. Hand initiated contact with Wholesale Auto. *See Benjamin v. Western Boat Building*, 472 F.2d 723, 729 (5th Cir. 1973) (finding that "extensive communications" between buyer and seller did not establish minimum contacts with the forum state when buyer initiated negotiations). It is also irrelevant that Wholesale Auto called Mr. Hand twice because those calls were part of the ongoing negotiations that Mr. Hand began. Dialing an Alabama number does not rise to the level of establishing minimum contacts with the State.

Finally, the transaction between Mr. Hand and Wholesale Auto took place outside the forum state. While Mr. Hand orally agreed to purchase the Jeep during one of the three phone calls while he was in Alabama, the Hands drove to Tennessee where they paid for the Jeep. This is a considerably different situation

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

than *Licciardello* where the defendants' actions that gave rise to the suit occurred outside of the forum state and reached into it. In *Licciardello*, the Tennessee defendant created a website in Tennessee that infringed on the Florida plaintiff's name, creating reputational damage to him in Florida. 544 F.3d at 1282-83. In this case, the Tennessee defendant sold the Alabama plaintiff a car in Tennessee. The action giving rise to the suit occurred in Tennessee against two persons also present in Tennessee. Wholesale Auto made certain fraudulent statements to the Hands when they were present in Alabama, but no effects occurred in Alabama until the Hands brought the Jeep into that jurisdiction. The Hands unilaterally created the connection between the defendant and the forum state, which is not sufficient to establish minimum contacts.

Even if the Hands could establish that Wholesale Auto had knowledge of their residency, such knowledge alone would be insufficient to establish minimum contacts. In *Walden*, the court of appeals had erroneously found sufficient contacts "by shifting the analytical focus from petitioner's contacts with the forum to his contacts with respondents. Rather than assessing petitioner's own contacts with Nevada, the court of appeals looked to petitioner's knowledge of respondents' 'strong forum connections.'" 134 S. Ct. at 1124 (citing *Rush*, 444 U.S., at 332, 100 S.Ct. 571). *Walden* criticized this approach as "impermissible" on the grounds that

it attributes the plaintiffs' contacts with the forum to the defendant. *Id.* at 1125. Under *Walden*, Wholesale Auto's knowledge of the Hands' residency is irrelevant to this court's analysis where no other conduct connects Wholesale Auto to Alabama in a meaningful way.

The Hands rely on *Summit Auto Sales, Inc. v. Draco, Inc.*, No. 2:15-CV-00736-KOB, 2016 WL 706011 (N.D. Ala. Feb. 23, 2016), which found that personal jurisdiction existed over a Maine defendant who allegedly made fraudulent misrepresentations to a buyer located in Alabama. *Summit Auto* is not binding on this Court and its facts differ significantly from this case. In *Summit Auto*, the Alabama plaintiff purchased several vehicles from the Maine defendant with whom it had prior dealings. *Id.* at *2. The plaintiff planned on reselling the vehicles to a foreign country that would not accept them if they had been previously used as taxis. *Id.* at *3. Over five different phone calls, the defendant denied that the vehicles had been used as taxis when asked by the plaintiff, despite knowledge to the contrary. *Id.* at *2. The defendant then faxed the plaintiff the bill of sale, which the plaintiff signed and returned with a check to the defendant. *Id.* The plaintiff arranged for a third party to send the vehicles to the plaintiff in Alabama. *Summit Auto* found the defendant was subject to Alabama's personal jurisdiction because "[w]hen the actual content of communications with a forum gives rise to

intentional tort causes of action, this alone constitutes purposeful availment." *Id.* at \*11 (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)). Because of the fraudulent communications by the defendant in making the sale of the vehicles by phone and fax to the plaintiff in Alabama, *Summit Auto* found the defendant subject to Alabama's personal jurisdiction.

Personal jurisdiction does not exist over Wholesale Auto under the reasoning of *Summit Auto*. Both Wholesale Auto and the defendant in *Summit Auto* sent communications which misrepresented facts about the cars they sought to sell to buyers in Alabama. *Summit Auto* is distinguishable in that the plaintiffs remained in Alabama to purchase the vehicles from the defendant by mailing a check, where the Hands drove to Tennessee and purchased the car in person there. The defendant in *Summit Auto* affirmatively completed the transaction by faxing the bill of sale and title guarantee letters. Wholesale Auto completed the transaction wholly in Tennessee, rather than in Alabama. The Hands have failed to show how any intentional tort was directed at Alabama, rather than Tennessee. In *Summit Auto*, the defendant's "actual content of communications with a forum gives rise to intentional tort causes of action" as all relevant acts occurred by remote communications sent by defendant to Alabama. Here, Wholesale Auto made certain fraudulent representations to the Hands in response to their inquiries, but

the actual purchase of the Jeep occurred in Tennessee. The content of the communications made by Wholesale Auto to Mr. Hand cannot "give rise to intentional tort causes of action," as no cause of action arose until the Hands actually purchased the vehicle in Tennessee. Wholesale Auto's subsequent contacts with Alabama are "random, fortuitous, and attenuated" and based upon the Hands driving the Jeep into Alabama. *Walden*, 134 S. Ct. at 1123 (quoting *Burger King*, 471 U.S. at 475 (1985).

### IV. CONCLUSION

For the reasons stated above, the Hands' Motion for Default Judgment is DENIED for lack of personal jurisdiction. If the Court dismissed this action for lack of personal jurisdiction, it appears that the Hands' claims would most likely be time-barred because of the age of this case. Thus, the Hands have leave to file a motion to transfer this action to an appropriate jurisdiction within two weeks of the entry of this Memorandum of Opinion. If the Hands do not file a motion to transfer within the stated time period, the Court will dismiss this action without prejudice.

**DONE** AND **ORDERED** ON JANUARY 5, 2018.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

190485

Page 13 of 13

Case 1:18-cv-00027-JRG-CHS   Document 20   Filed 01/05/18   Page 13 of 13
PageID #: 120

the actual purchase of the Jeep occurred in Tennessee. The content of the communications made by Wholesale Auto to Mr. Hand cannot "give rise to intentional tort causes of action," as no cause of action arose until the Hands actually purchased the vehicle in Tennessee. Wholesale Auto's subsequent contacts with Alabama are "random, fortuitous, and attenuated" and based upon the Hands driving the Jeep into Alabama. *Walden*, 134 S. Ct. at 1123 (quoting *Burger King*, 471 U.S. at 475 (1985).

### IV. CONCLUSION

For the reasons stated above, the Hands' Motion for Default Judgment is DENIED for lack of personal jurisdiction. If the Court dismissed this action for lack of personal jurisdiction, it appears that the Hands' claims would most likely be time-barred because of the age of this case. Thus, the Hands have leave to file a motion to transfer this action to an appropriate jurisdiction within two weeks of the entry of this Memorandum of Opinion. If the Hands do not file a motion to transfer within the stated time period, the Court will dismiss this action without prejudice.

**DONE** AND **ORDERED** ON JANUARY 5, 2018.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

190485